Steven S. Rand
Anna S. Park
ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York  10022
(212) 223-0400

Attorney for Defendant
  *Countrywide Home Loans, Inc.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIA MAURO, | Case No.:  07 CV 1268 (JFB) |
| Plaintiff, | |
| - against - | |
| COUNTRYWIDE HOME LOANS, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., PETER J. DAWSON AND BMG ADVISORY SERVICES, LTD., VICTORIA S. KAPLAN and VICTORIA S. KAPLAN, P.C., | |
| Defendants. | |

**COUNTRYWIDE HOME LOANS, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**ZEICHNER ELLMAN & KRAUSE LLP**
575 Lexington Avenue
New York, New York 10022
Telephone:  (212) 223-0400

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................iii

PRELIMINARY STATEMENT ...........................................................................1

STATEMENT OF FACTS ...................................................................................2

ARGUMENT .......................................................................................................6

POINT I        THE STANDARD FOR SUMMARY JUDGMENT ....................6

POINT II       PLAINTIFF'S FIRST CAUSE OF ACTION FAILS
               BECAUSE THE SUBJECT MORTGAGE LOANS ARE
               EXEMPT FROM COVERAGE UNDER RESPA AND
               TILA.........................................................................................7

POINT III      THE SECOND CLAIM AGAINST COUNTRYWIDE FOR
               BREACH OF FIDUCIARY DUTY SHOULD BE
               DISMISSED AS NO FIDUCIARY DUTY EXISTS
               BETWEEN A LENDER AND A BORROWER.........................11

POINT IV       THE THIRD CLAIM AGAINST COUNTRYWIDE FOR
               BREACH OF CONTRACT LACKS MERIT AND
               SHOULD BE DISMISSED .......................................................13

POINT V        PLAINTIFF'S FOURTH CLAIM AGAINST
               COUNTRYWIDE FOR INJUNCTIVE RELIEF IS
               SIMILARLY MERITLESS AND SHOULD BE
               DISMISSED .............................................................................16

    1.         Plaintiff Cannot Meet the Test For a Preliminary Injunction ........16

    2.         Plaintiff Cannot Show Irreparable Injury.......................................18

    3.         Plaintiff is Equitably Estopped  From Obtaining Injunctive
               Relief .............................................................................................18

POINT VI       PLAINTIFF'S FIFTH CLAIM FOR DECLARATORY
               RELIEF SHOULD LIKEWISE BE DISMISSED.........................19

POINT VII      IN THE ALTERNATIVE, COUNRTYWIDE'S CROSS-
               CLAIMS AGAINST DAWSON, BMG AND KAPLAN
               SHOULD BE GRANTED ..........................................................21

1.    Countrywide's Cross-Claim Against Kaplan.................................................21

2.    Countrywide's Cross-Claim Against Dawson and BMG
      Should Be Granted .......................................................................................23

CONCLUSION ......................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Adema v. Great N. Dev. Co.,
  374 F. Supp. 318 (N.D. Ga. 1973) ........................................................................8

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242, 106 S. Ct. 2505 (1986) ...................................................................7

Bank Leumi Trust Co. v. Block 3102 Corp.,
  180 A.D.2d 588, 580 N.Y.S.2d 299 (1st Dept. 1992) ........................................ 11

Barclays Bank of New York v. Sokol,
  128 A.D.2d 492, 512 N.Y.S.2d 419 (2d Dept. 1987)......................................... 20

Beneficial Homeowner Serv. Corp. v. Butler,
  14 Misc.3d 1233A, 836 N.Y.S.2d 491 (Kings Cty. Sup. Ct. 2007) .................... 19

Bunge Corp. v. Manufacturers Hanover Trust Co.,
  31 N.Y.2d 223, 335 N.Y.S.2d 412 (1972) ......................................................... 18

Center v. Hampton Affiliates, Inc., et al.,
  66 N.Y.2d 782, 497 N.Y.S.2d 898 (1985) ..........................................................13

Citidress II v. 207 Second Avenue Realty Corp.,
  21 A.D.3d 774, 802 N.Y.S.2d 393 (1st Dept. 2005) .......................................... 19

County of Tioga v. Solid Waste Industries, Inc.,
  178 A.D.2d 873, 577 N.Y.S.2d 922 (3d Dept. 1991)......................................... 20

Emigrant Mortgage Company, Inc. v. Mollo,
  20 Misc.3d 1116(A), 867 N.Y.S.2d 16 (Kings Cty. Sup. Ct. 2008)......................9

Gaona v. Town & Country Credit,
  324 F.3d 1050 (8th Cir. 2003) ...........................................................................10

Gateway State Bank v. Shangri-La Private Club for Women, Inc.,
  113 A.D.2d 791, 493 N.Y.S.2d 226 (2d Dept. 1985)......................................... 20

Iannuzzi v. Washington Mut. Bank,
  2008 WL 3978189 (E.D.N.Y. Aug. 21, 2008) ................................................... 11

In re Nassau Ins. Co.,
  161 A.d.2d 146, 554 N.Y.S.2d 551 (1st Dept. 1990) ............................................ 24

LaPorte v. Wells Fargo Bank, N.A.,
  2009 U.S.D.J. LEXIS 59849, 6 (E.D. Tenn. 2009) ................................................ 8

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
  475 U.S. 574, 106 S. Ct. 1348 (1986) ................................................................. 6, 7

McCarthy v. Option One Mortgage Corp.,
  362 F.3d 1008 (7th Cir. 2004) ............................................................................ 10

Pimpinello v. Swift & Co.,
  253 N.Y. 159 (1930) ........................................................................................... 14

Pinky Originals, Inc. v. Bank of India,
  1996 WL 603969 (S.D.N.Y. 1996) ...................................................................... 13

Rosa Hair Stylists, Inc. v. Jaber Food Corp.,
  218 A.D.2d 793, 691 N.Y.S.2d 167 (1995) ......................................................... 16

Russo v. Banc. of Am. Sec., LLC,
  2007 WL 1946541 (S.D.N.Y. 2007) .................................................................... 11

Scocca v. Cendant Mortg. Corp.;
  2004 U.S. Dist. LEXIS 22955 (E.D. Pa 2004) ...................................................... 8

Sebro Packaging v. S.T.S. Indus.,
  93 A.D. 2d 785, 461 N.Y.S.2d 812 (1st Dept. 1983) ........................................... 13

Societe Generale v. Federal Ins. Co.,
  856 F.2d 461 (2d Cir. 1988) ................................................................................ 18

Spira v. Nick,
  876 F.Supp. 553 (S.D.N.Y.1995) ........................................................................ 12

Teachers Ins. & Annuity Ass'n of Am. v. Wometco Enters.,
  833 F.Supp. 344 (S.D.N.Y. 1993) ....................................................................... 11

Texas Liquids Holdings, LLC v. Key Bank National Association,
  2007 WL 950136 (S.D.N.Y. 2007) ...................................................................... 11

W.T. Grant Co. v. Srogi,
  52 N.Y.2d 496, 438 N.Y.S.2d 761 (1981) ....................................................... 16, 17

**STATUTES**

12 U.S.C. §1206(a)(1) ............................................................................................7

12 U.S.C. §1206(b) ...............................................................................................9

12 U.S.C. §1206(b) ............................................................................................7, 8

15 U.S.C. §1603(1) ...............................................................................................8

15 U.S.C.S. §1602(h) ............................................................................................9

**OTHER AUTHORITIES**

12 C.F.R. §226.3 ..................................................................................................8

Official Staff Commentary on Regulation Z Truth in Lending, Board of
    Governors of the Federal Reserve System, Section 226.3, Commentary 3
    (Feb. 28, 1997)..............................................................................................8

24 C.F.R. §3500.5(b)(2 ..........................................................................................9

Fed. R. Civ. P. 56.............................................................................................1, 6

Defendant Countrywide Home Loans, Inc. ("Countrywide") submits this memorandum of law in support of its motion pursuant to Fed. R. Civ. P. 56 granting it summary judgment against plaintiff and dismissing the Amended Complaint as against it in all respects or in the alternative, granting its cross-claims against Peter Dawson, BMG Advisory Services, Ltd. ("BMG"), Victoria S. Kaplan and Victoria S. Kaplan, P.C. (collectively, "Kaplan").

## PRELIMINARY STATEMENT

Plaintiff admits that she sought and obtained mortgages from Countrywide on the two investment properties she owns, located at 213 Fulton Street (the "Fulton Street Loan") and 168 Grand Street (the "Grant Street Loan"), and that she knowingly authorized payment of the proceeds of the Fulton Street and Grant Street Loans (the "Loan Proceeds") to her financial adviser Peter Dawson ("Dawson") to invest on her behalf, with the promise of a significantly higher rate of return on investment.

Unfortunately, Dawson like other more celebrated financial scam artists we have read about in the press, had engaged in a Ponzi scheme, victimizing numerous borrowers, including plaintiff. As plaintiff now concedes, Dawson absconded with the Loan Proceeds, and despite Dawson's subsequent arrest and conviction, little of the moneys he misappropriated from his victims has been recovered. Consequently, plaintiff now desperately strains to recoup the monies Dawson converted by contriving claims against Countrywide, even though Countrywide indisputably made the Fulton Street and Grant Street Loans to plaintiff in good faith and without notice of any fraud on the part of

Dawson or anyone else. Accordingly, (and as will be detailed at length below), plaintiff's allegations against Countrywide are without merit as a matter of law, as:

- The first claim against Countrywide fails because the subject mortgage loans are on investment properties, exempt from coverage under RESPA and TILA. (See Memorandum of Law, Point II)

- The second claim against Countrywide for breach of fiduciary duty should be dismissed, as no fiduciary duty exists between a lender and a borrower. (See Memorandum of Law, Point III)

- The third claim against Countrywide for breach of contract should be dismissed as Countrywide performed all of the terms and conditions of the Loan Agreements on its part to be performed. (See Memorandum of Law, Point IV)

- The fourth claim for injunctive relief should be dismissed, because plaintiff cannot show a likelihood of success on the merits, irreparable injury or that the equities favor her in this action. (See Memorandum of Law, Point V)

- The fifth claim for declaratory relief should be dismissed, because plaintiff fails to allege and cannot establish that Countrywide engaged in any bad faith, oppressive or unconscionable conduct. (See Memorandum of Law, Point VI).

For each of these reasons, plaintiff's Amended Complaint should be dismissed against Countrywide in all respects.

## STATEMENT OF FACTS

The facts of this case are set forth in detail in the accompanying Declaration of Jonathan Hyman, Vice President of Bank of America Home Loans dated February 22, 2010 (the "Hyman Decl."); the Declaration of Steven S. Rand, Esq., dated February 22, 2010 (the "Rand Decl."); the Declaration of William J. Wallace, Assistant District Attorney and Deputy Bureau Chief, Government/Consumer Frauds Bureau in the

Office of the District Attorney of Nassau County ("Wallace Declaration"); the Declaration

of Chuck Franssen, Financial Investigator in the Office of the District Attorney of Nassau

County ("Franssen Declaration"); and Countrywide's Rule 56.1 Statement of Undisputed

Facts (the "56.1 Statement").   For the Court's convenience, the following is a brief

summary of the relevant facts[1].

Dawson was a licensed investment advisor who for more than a decade,

through his company, BMG[2], provided financial and investment management services to

numerous individuals, including plaintiff Mauro.  (Amended Complaint ¶¶ 9-10, 14).   In

2006, Dawson advised plaintiff that her continued maintenance of investment properties,

unencumbered by any mortgages, could result in costly state and federal tax consequences.

(Amended Complaint ¶ 15).   Dawson recommended that plaintiff mortgage the Fulton

Street property and the Grant Street property and use the mortgage loan proceeds for

investment purposes. (Amended Complaint ¶ 16). Dawson sweetened his recommendation

to plaintiff with the promise that he could invest the mortgage proceeds into a "hedge

fund" that would generate sufficient returns to pay the monthly mortgage payments;

provide additional income to Mauro and ultimately "double her money."   (Amended

Complaint ¶ 16; Mauro Tr. Pg. 79, Lns. 19-25).  Plaintiff admittedly found Dawson's sales

pitch attractive, and based on her decade-long relationship of trust with Dawson, accepted

Dawson's recommendation and initiated loan applications with Countrywide for both the

---

[1]   Unless otherwise defined, all capitalized terms shall have the meaning ascribed to them in the Hyman
Declaration and the Rule 56.1 Statement.

[2]   Dawson is the sole shareholder and officer of BMB (See Amended Complaint ¶ 9).

3

Fulton Street and the Grant Street properties.  (Amended Complaint ¶ 17; Mauro Tr. Pg. 39).

Countrywide approved plaintiff for a loan in the amount of $340,000 for the Fulton Street property as well as a loan in the amount of $175,000 for the Grant Street property (collectively, the "Mortgage Loans").  (Amended Complaint ¶ 18).  On May 30, 2006, closings of both the Fulton Street and the Grant Street Loans took place back to back at Dawson's office.  (Amended Complaint ¶ 20).  At the closings, plaintiff admittedly executed, inter alia, each of the Note, the Mortgage, the Truth in Lending Disclosure Statement and the HUD-1 Settlement Statement (the "Loan Documents") for the Fulton Street and Grant Street Loans.  (See Exhibits E and F, respectively; Mauro Tr. Pgs. 53-68).  Mauro also admittedly executed documents entitled, "Record of Checks Disbursed at Closing" for the Fulton Street Loan (the "Fulton Street Disbursement Record") as well as for the Grant Street Loan (the "Grant Street Disbursement Record," collectively the "Disbursement Records").  (See Exhibits 5 and 6; Mauro Tr. Pg. 91, Lns. 11-20).  The Fulton Street and Grant Street Disbursement Records each identified the intended payee of the respective Loan Proceeds as BMG, the purported investment company owned by Dawson, as well as itemizing the amounts to be paid to BMG on the Fulton Street Loan in the amount of $329,832.04 ("Fulton Street Loan Proceeds") and the Grant Street Loan in the amount of $168,212.06, respectively ("Grant Street Loan Proceeds," collectively the "Loan Proceeds").  (See Exhibits 5 and 6).

Although the Amended Complaint alleges in conclusory terms that plaintiff has "no recollection" of having signed either of the Disbursement Records (Amended Complaint ¶ 33); plaintiff's testimonial admissions that she authorized payment of each of the proceeds of the Fulton Street and Grant Street Loans to the order of BMG is corroborated by the Wallace Declaration and the Franssen Declaration, based on their notes of an interview with the plaintiff made contemporaneously with plaintiff's swearing of a criminal complaint against Dawson, on or about January 4, 2007. Dawson has since been convicted and sentenced to prison for, <u>inter alia</u>, multiple counts of grand larceny for defrauding many of his former clients, including the plaintiff. (<u>See</u> Exhibit 7).

Plaintiff also now admits that following the Loan Closings, she received a statement of account from Dawson indicating that the proceeds of the Fulton Street Mortgage Loan in the amount of $329,832.04 and the proceeds of the Grant Street Mortgage Loan in the amount of $168,212.05 were deposited by Dawson in a trust account maintained in the name of BMG for plaintiff's benefit. (<u>See</u> Exhibit 8; Mauro Tr. Pg. 100, Ln. 25 and Pg. 101, Lns. 2 -4 and 21 – 25).

On or about February 8, 2007, plaintiff filed the complaint in this action and on or about June 19, 2008, plaintiff filed an Amended Complaint alleging claims against defendant Countrywide, including failure to comply with the Truth in Lending Act ("TILA") and the Real Estate Settlement Procedures Act ("RESPA"), breach of fiduciary duty, breach of contract, injunctive and declaratory relief, <u>inter alia</u>, including the rescission and/or voiding of the subject notes and mortgages and/or enjoining Countrywide

from commencing an action to foreclose the Grant Street and Fulton Street Mortgages. (See Exhibit 1).  In addition, plaintiff alleged various claims against defendant Dawson and Kaplan, including allegations of fraud and conversion.  On July 7, 2008, Countrywide served its Answer and Cross-Claim denying liability and asserting various affirmative defenses and cross-claims against each of the co-defendants on the theories of indemnification and contribution.  (See Exhibit 2).

For each of the following reasons, each of the claims asserted against Countrywide in the Amended Complaint is devoid of merit and should be dismissed.

## ARGUMENT

### POINT I

### THE STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  According to the U.S. Supreme Court in Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.:

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial*."   Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-587, 106 S. Ct. 1348, 1356 (1986) (citations omitted & emphasis in original).

"If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250, 106 S. Ct. 2505, 2511 (1986) (citations omitted). In ruling on a motion for summary judgment, the Judge's function is not to weigh the evidence and determine the truth of an issue but merely to determine whether there is an issue to be tried. Id. at 249, 106 S. Ct. at 2513.

As shown below, there are no bona fide issues of fact in dispute. Accordingly, Countrywide is entitled to summary judgment as a matter of law.

## POINT II

### PLAINTIFF'S FIRST CAUSE OF ACTION FAILS BECAUSE THE SUBJECT MORTGAGE LOANS ARE EXEMPT FROM COVERAGE UNDER RESPA AND TILA

It is undisputed that neither the Fulton Street nor Grant Street properties are plaintiff's residence (Mauro Tr. Pgs. 12-13). Rather, Plaintiff admittedly obtained the Fulton Street and Grant Street Loans as cash out refinance on investment properties she owned. (See Exhibits E and F; Mauro Tr. Pg. 13). Accordingly, the first claim fails to state a claim as RESPA and TILA "[do] not apply to credit transactions involving extensions of credit . . . primarily for business, commercial or agricultural purposes." 12 U.S.C. §1206(a)(1). 12 U.S.C. §1206(b) prescribes that subsection (a)(1) "shall be the same as the exemption for such credit transactions under section 104(1) of the Truth in Lending

Act [15 U.S.C. §1603(1)]." 12 U.S.C. §1206(b).  See LaPorte v. Wells Fargo Bank, N.A.,

2009 U.S.D.J. LEXIS 59849, 6 (E.D. Tenn. 2009) (RESPA does not apply to credit

transactions secured by real property used as commercial real property.); Scocca v.

Cendant Mortg. Corp., 2004 U.S. Dist. LEXIS 22955 (E.D. Pa 2004).

        Section 1603(1) of the Truth in Lending Act ("TILA") similarly exempts

from coverage "credit transactions involving extensions of credit primarily for business,

commercial or agricultural purposes." 15 U.S.C. §1603(1).   TILA's implementing

regulation, Regulation Z, 12 C.F.R. §226.3 ("Regulation Z") and Commentary 3 of the

Official Commentary of the Federal Reserve Board Staff to Regulation Z expressly state

that, "Credit extended to acquire, improve, or maintain rental property (regardless of the

number of housing units) that is not owner-occupied is deemed to be for business

purposes."  Regulation Z, 12 C.F.R. §226.3; Official Staff Commentary on Regulation Z

Truth in Lending, Board of Governors of the Federal Reserve System, Section 226.3,

Commentary 3 (Feb. 28, 1997).  Adema v. Great N. Dev. Co., 374 F. Supp. 318 (N.D. Ga.

1973) ("Since plaintiff had purchased lots for investment purposes and not for personal

use, Truth in Lending Act exemption pertaining to credit extensions 'for business or

commercial purposes' was inapplicable, and plaintiff was not a "consumer," as defined in

15 U.S.C.S. §1602(h)."). By extension, such rental property business loans are also exempt from coverage under RESPA[3]. See 24 C.F.R. §3500.5(b)(2); 12 U.S.C. §1206(b).

Mauro, who resides at 20 Elm Street, Westbury, New York (Mauro Tr. Pg. 12, Lns. 5-7) testified that the Mortgaged Properties are investment properties from which she collects rents to supplement her income. (Mauro Tr. pg. 13, Lns. 4-9; pg. 17, Lns. 10-22). Mauro further testified that she mortgaged both the Fulton Street Property and the Grant Street Property to invest the Loan Proceeds with Dawson at a "higher rate of return." (Mauro Tr. pg. 39, Lns. 7-11; pg. 43, Lns. 8-19; pg. 47, Lns. 17-20; pg. 48, Lns. 11, 14; and pg. 49, Ln. 20). As the Mortgaged Properties are non-owner occupied rental property, the Loans are business loans and therefore exempt from coverage under TILA and RESPA. Accordingly, there is no right to rescind a mortgage on an investment property. See e.g. Emigrant Mortgage Company, Inc. v. Mollo, 20 Misc.3d 1116(A), 867 N.Y.S.2d 16 (Kings Cty. Sup. Ct. 2008).

Assuming *arguendo* that the Loans were subject to coverage under TILA and RESPA, which they plainly are not, plaintiff's assertion that Countrywide allegedly violated TILA and RESPA by failing to provide her with copies of the Loan Documents is false and is contradicted by her own admissions. Contrary to the assertions in her amended complaint, plaintiff admitted that she executed all of the Loan Documents for

---

[3] Regulation X, 24 C.F.R. §3500.5(b)(2) defines business purpose loans as "An extension of credit primarily for a business, commercial, or agricultural purpose, as defined by Regulation Z, 12 C.F.R. §226.3(a)(1). Persons may rely on Regulation Z in determining whether the exemption applies." 24 C.F.R. §3500.5(b)(2); 12 U.S.C. §1206(b).

both of the Mortgaged Properties at the Closings.  (Mauro Tr. Pgs. 53-69; pg. 51, Lns. 21-25; pg. 52, Lns. 1-22).  Copies of the signed Loan Documents acknowledging their receipt (See Exhibits E and F), evidence that plaintiff did in fact receive them.  <u>McCarthy v. Option One Mortgage Corp.</u>, 362 F.3d 1008, 1011 (7th Cir. 2004) (finding mere assertion of non-receipt insufficient to rebut written evidence that disclosures were provided); <u>Gaona v. Town & Country Credit</u>, 324 F.3d 1050, 1054 (8th Cir. 2003) (finding allegations that disclosures were not provided insufficient to rebut presumption).

Plaintiff's conclusory allegations that Countrywide "as well as Dawson" failed to provide her with copies of the Loan Documents is disingenuous at best.  Indeed, Mauro <u>admits</u> that she executed all of the Loan Documents at the Closing and entrusted her agent, Dawson to take the Loan Documents and provide her with copies within "two or three days."  (Mauro Tr. Pg. 52, Lns. 5-12).  It is most revealing that even when she did not receive the Loan Documents from Dawson within "two or three days," plaintiff testified that she did not follow-up with Dawson to ask him for the Loan Documents because she "just trusted him" and "figured [she] would get them eventually."  (Mauro Tr. Pg. 52, Lns. 13-22).

Therefore, even if RESPA and/or TILA were applicable to plaintiff's first claim, and for the reasons discussed above, they are not, Countrywide cannot be held accountable for the failure of plaintiff's own agent Mr. Dawson to honor his promise to deliver a copy of the Loan Closing Documents to plaintiff, as plaintiff now admits that she entrusted Dawson with copies of the Loan Documents.  (Mauro Tr. Pg. 52). For each of

10

these reasons, plaintiff's first claim alleging violations of RESPA and TILA is devoid of merit and should be dismissed.

## POINT III

### THE SECOND CLAIM AGAINST COUNTRYWIDE FOR BREACH OF FIDUCIARY DUTY SHOULD BE DISMISSED AS NO FIDUCIARY DUTY EXISTS BETWEEN A LENDER AND A BORROWER

The elements of a breach of fiduciary duty claim are: (1) the existence of a fiduciary duty; and (2) the breach of that fiduciary duty. See Russo v. Banc. of Am. Sec., LLC, 2007 WL 1946541 (S.D.N.Y. 2007). When examining whether a fiduciary relationship exists under New York law, a court examines "whether one person has reposed trust or confidence in the integrity and fidelity of another who thereby gains a resulting superiority or influence over the first." Iannuzzi v. Washington Mut. Bank, 2008 WL 3978189 (E.D.N.Y. Aug. 21, 2008) citing Teachers Ins. & Annuity Ass'n of Am. v. Wometco Enters., 833 F.Supp. 344, 349-50 (S.D.N.Y. 1993).

Despite plaintiff's allegations to the contrary, her claim against Countrywide must fail, because the relationship between a borrower and a lender is that of creditor and debtor, which does not result in a fiduciary relationship. Texas Liquids Holdings, LLC v. Key Bank National Association, 2007 WL 950136 (S.D.N.Y. 2007). There is no fiduciary duty arising out of the contractual arm's length debtor and creditor legal relationship between a borrower and a bank. Bank Leumi Trust Co. v. Block 3102 Corp., 180 A.D.2d 588, 589, 580 N.Y.S.2d 299, 301 (1st Dept. 1992), appeal denied, 80 N.Y.2d 754, 587 N.Y.S.2d 906 (1992).

Similarly, plaintiff fails to allege any facts from which a fiduciary duty could be inferred between Kaplan and plaintiff.  <u>Spira v. Nick</u>, 876 F.Supp. 553, 557 (S.D.N.Y.1995) ("complaint must state allegations of fiduciary duty with a fair degree of specificity").  Indeed, Kaplan was not plaintiff's agent and plaintiff has admittedly had no direct communication with Kaplan until the day of the Closing.  (Mauro Tr. Pg. 40, Lns. 3-17; Pg. 51, Lns. 13-17).  Even on the day of the Closing, plaintiff testified that she did not speak with anyone aside from Dawson.  In fact, plaintiff testified that she did not even know who Victoria Kaplan is.  (Mauro Tr. Pg. 70, Lns. 20-25; Pg. 71, Lns. 2-4; Pg. 114, Lns. 6-7).  In light of the fact that Kaplan was not in privity with plaintiff nor with Kaplan that would rise to the level of a fiduciary relationship, plaintiff's baseless claim that Countrywide breached its alleged fiduciary duty with plaintiff or by extension with Kaplan is wholly without merit.

Finally, Plaintiff admits that Dawson was her agent and fails to advance any evidence to support her conclusory allegations that Dawson inexplicably was also an agent of Countrywide.  During her deposition, plaintiff testified to the following regarding Dawson:

- Plaintiff trusted him and had a strong relationship of trust with Dawson over the better part of a decade.  (Mauro Tr. pg. 49, Lns. 20-23; pg. 28, Lns. 6-7; pg. 22, Lns. 13-20).
- Dawson had acted as plaintiff's husband's investment advisor; subsequently became plaintiff's financial and investment advisor, as Dawson managed "everything," including investments for plaintiff.  (Mauro Tr. pg.19, Lns. 21-22; pg. 23, Lns. 3-6, 15-22; pg. 21, Lns. 18-19; pg. 27, Lns. 21-25; pg. 28, Ln. 2).

12

- Plaintiff made arrangements with Dawson to obtain mortgage loans on the Mortgaged Properties and authorized him to invest the Loan Proceeds. (Mauro Tr. pg. 40, Lns. 3-7; pg. 43, Lns. 9-13).

- Plaintiff believed that Dawson was an attorney and was acting as her attorney at the Closings. (Mauro Tr. pg. 43, Lns. 20-25; pg. 44, Lns. 2-4).

Based on the foregoing, it is evident that Dawson was plaintiff's agent and any alleged misconduct by plaintiff's agent should be attributed to plaintiff and not to Countrywide. Center v. Hampton Affiliates, Inc., et al., 66 N.Y.2d 782, 497 N.Y.S.2d 898 (1985) (the acts and knowledge of an agent acting within the scope of his agency are imputed to the agent's principal). Accordingly, the second claim for breach of fiduciary duty should be dismissed.

## POINT IV

## THE THIRD CLAIM AGAINST COUNTRYWIDE FOR BREACH OF CONTRACT LACKS MERIT AND SHOULD BE DISMISSED

The elements of a breach of contract claim include: (i) the formation of a contract between the parties, (ii) a party's performance of its obligations thereunder, (iii) the party's failure to perform, and (iv) resulting damages. Pinky Originals, Inc. v. Bank of India, 1996 WL 603969 (S.D.N.Y. 1996). A breach of contract claim is insufficiently pleaded when, as here, plaintiff failed to specify the contractual obligation that was alleged to have been breached. Sebro Packaging v. S.T.S. Indus., 93 A.D. 2d 785, 461 N.Y.S.2d 812, (1st Dept. 1983).

Plaintiff's claim for breach of contract fails because Countrywide performed fully under the terms of the Loan Documents.  At the Closing, Countrywide delivered the fully executed Loan Documents to Mauro, receipt of which by her agent Dawson she acknowledges, and Countrywide funded the Loan.  Kaplan testified that pursuant to Mauro's express instructions, she drew two checks made payable to BMG in the amounts of the Fulton Street Loan Proceeds and the Grant Street Loan Proceeds. (Kaplan Tr. Pg. 97, Lns. 10-13, 20-25; Pg. 98, Lns. 2-14).  Kaplan further testified that at the closings, that she physically handed the Loan Proceeds checks to Mauro.  (Kaplan Tr. Pg. 106, Lns. 18-25).  Moreover, in her complaint against Dawson to the Nassau County Assistant District Attorney, Mauro stated that she took out the Fulton Street and Grant Street Mortgages at Dawson's advice and invested the Loan Proceeds with Dawson for a promised 12% return on the investment of the Loan Proceeds.  (Franssen Declaration ¶4 and Exhibit A attached thereto; Wallace Declaration ¶ 4 and Exhibit A attached thereto).

Further, plaintiff's claim for breach of contract is devoid of any merit because it is contradicted by plaintiff's own testimony and documentary proof.  At the Fulton Street Closing, plaintiff executed the Checks Disbursement Record which identified the payees of the Fulton Street Loan Proceeds.  (See Exhibit 5).  Among the list of payees was "BMG Advisory Services" who was listed on the Checks Disbursement Record as the recipient of $329,832.04, the entire amount of the Fulton Street Loan Proceeds after closing costs and related fees.  Plaintiff executed the Fulton Street Disbursement Record, thereby authorizing payment of the Fulton Street Loan Proceeds directly to BMG, a company controlled by Dawson. See Pimpinello v. Swift & Co., 253 N.Y. 159, 162-163

14

(1930) (the signer of a deed or an instrument is conclusively bound thereby); (Mauro Tr. Pg. 91, Lns. 7-10, 18-20).

Similarly, Countrywide did not breach its obligations under the Grant Street Note.  Plaintiff executed the Grant Street Disbursement Record which identified the payees of the Grant Street Loan Proceed.  (Kaplan Tr. Pg. 115, Lns. 22-25; Pg. 116, Lns. 2-21; See Exhibit 6).  As with the Fulton Street Loan Proceeds, Dawson's company BMG was listed as the payee of the Grant Street Loan Proceeds in the amount of $168,212.06.

Although the Amended Complaint alleges that Mauro's signature on the Grant Street Record of Checks Disbursed is a forgery, plaintiff now admits that she authorized payment of the Grant Street Loan Proceeds to Dawson, intending to invest the Grant Street Loan Proceeds with Dawson in order to "double [her] money."  (Mauro Tr. Pg. 43, Lns. 9-16; Pg. 45, Lns. 13-22; Pg. 96, 12-19; Pg; 79; Lns. 13-21).

Having voluntarily and intentionally entrusted Dawson with the Loan Proceeds, plaintiff cannot now magically fabricate a remedy against Countrywide, because Dawson absconded with the money.  It will not be the first time, or presumably the last time, a so called "investment adviser" took advantage of his "client."  It will also not be the first time that such a client has improperly attempted to recoup her funds from the financial institution that loaned her the money which she used for ill advised investments with a fraudster.  The law in New York is clear, however, that although plaintiff may have a valid claim against Dawson, she does not, nor can she state a claim against Countrywide which

15

funded the Mortgage Loans in good faith, and which plaintiff admittedly received at the Closings and <u>chose</u> to give them to Dawson for investment.

Based on the foregoing, Countrywide fully performed its obligations under the Loan Documents[4].  There can be no question that plaintiff actually received the Loan Proceeds and <u>intended</u> to and did in fact cause them to be paid to Dawson's company BMG to invest on her behalf.  Therefore, plaintiff's third cause of action for alleged breach of contract against Countrywide should be dismissed.

## POINT V

## PLAINTIFF'S FOURTH CLAIM AGAINST COUNTRYWIDE FOR INJUNCTIVE RELIEF IS SIMILARLY MERITLESS AND SHOULD BE DISMISSED

**1.      <u>Plaintiff Cannot Meet the Test For a Preliminary Injunction</u>**

Under New York law, it is well established that a preliminary injunction cannot be issued unless the plaintiff demonstrates: (i) likelihood of ultimate success on the merits; (ii) irreparable injury absent a granting of the preliminary injunction; and (iii) a balancing of the equities in favor of the injunction.  <u>See</u> <u>W.T. Grant Co. v. Srogi</u>, 52 N.Y.2d 496, 517, 438 N.Y.S.2d 761, 771 (1981).  In essence, plaintiff must demonstrate a clear right to the relief sought.  <u>See also</u> <u>Rosa Hair Stylists, Inc. v. Jaber Food Corp.</u>, 218 A.D.2d 793, 794, 691 N.Y.S.2d 167 (1995) ("A mandatory injunction should not be granted, absent

---

[4]    In fact, it is plaintiff who has breached her contract with Countrywide by failing to make her monthly loan payments for both Mortgages and being in payment default since February 1, 2007.  (<u>See</u> Hyman Decl. ¶15)

16

extraordinary circumstances, where the status quo would be disturbed, and the plaintiff would receive the ultimate relief sought pendente lite.")

Plaintiff has failed to satisfy her heavy burden of proving a clear right to injunctive relief, as for the reasons set forth above, her conclusory claims against Countrywide must be dismissed.

First, Plaintiff must not only plead a claim, but must also establish a reasonable likelihood of success on the merits, in order to meet her burden to qualify for a preliminary injunction. W.T. Grant Co., 52 N.Y.2d at 517, supra. Plaintiff's claims for alleged violations of TILA and RESPA are meritless as a matter of law, because the subject Mortgage Loans are exempt from coverage under both TILA and RESPA[5]. (See Point II (1) above). Plaintiff's claim for breach of fiduciary duty is also without merit, because the relationship between a lender and a borrower is one of a creditor and debtor, creating no fiduciary relationship. Since Countrywide does not owe a fiduciary duty to plaintiff, there can be no breach of such duty and therefore no damages. (See Point III above). Finally, as discussed in detail in Point IV above, plaintiff's claim for breach of contract must also fail, because plaintiff's own testimony and documentary evidence establishes conclusively that Countrywide performed all of the terms and conditions on its part to be performed. Therefore, Countrywide did not breach any terms under the Loan Documents. (See Point IV above). In sum, the facts proffered by plaintiff do not in any way give rise to any cognizable claim against Countrywide.

2.      **Plaintiff Cannot Show Irreparable Injury**

Plaintiff also fails to meet the second requirement for a preliminary injunction, a showing that irreparable harm would result without a preliminary injunction. To date, Countrywide has not commenced an action to foreclose any of the subject Mortgages. Therefore, there is no showing of imminent irreparable harm.

3.      **Plaintiff is Equitably Estopped**
        **From Obtaining Injunctive Relief**

Finally, Plaintiff fails to satisfy the balance of the hardships test. The doctrine of equitable estoppel, which provides that, where one of two innocent persons must suffer due to the acts of a third, the party that enabled the third party to cause the loss should bear the loss, is clearly applicable here. Bunge Corp. v. Manufacturers Hanover Trust Co., 31 N.Y.2d 223, 228-229, 286 N.E.2d 903, 906, 335 N.Y.S.2d 412, 428 (1972) (noting that "the principles which underlie equitable estoppel place the loss upon him whose misplaced confidence has made the wrong possible") (citation omitted). Here, plaintiff admittedly applied for and obtained the Mortgage Loans and intended to and did authorize the Loan Proceeds to be paid directly to Dawson in order for Dawson to invest the Loan Proceeds in various investment tools to generate income and "double [her] money." (Mauro Tr. Pg; 79; Lns. 13-21). However, Countrywide made the mortgage loans in compliance with applicable law and disbursed the Loan Proceeds according to plaintiff's express instructions. See Societe Generale v. Federal Ins. Co., 856 F.2d 461, 467 (2d Cir. 1988)

---

[5]   A violation of RESPA does not give a private right of action against Countrywide. Therefore, an alleged violation of RESPA is not a defense to a foreclosure action.

("Characteristically, the doctrine is invoked successfully against a party who has occasioned a loss through an obvious lack of care or an affirmative act fairly identified as the cause of the loss.").

Based on the foregoing, as between two innocents, plaintiff, who caused the Loan Proceeds to be paid over to Dawson ostensibly to "double her money," thereby facilitating Dawson's ultimate fraud, should bear any loss.

Plaintiff is unable to satisfy any portion of the test for a preliminary injunction. Therefore, plaintiff's fourth claim for injunctive relief should be dismissed.

## POINT VI

### PLAINTIFF'S FIFTH CLAIM FOR DECLARATORY RELIEF
### SHOULD LIKEWISE BE DISMISSED

"A mortgagor is bound by the terms of his contract as made and cannot be relieved from his default, if one exists, in the absence of waiver by the mortgagee, or estoppel, or bad faith, fraud, oppressive or unconscionable conduct on the latter's part." Beneficial Homeowner Serv. Corp. v. Butler, 14 Misc.3d 1233A, 836 N.Y.S.2d 491 (Kings Cty. Sup. Ct. 2007) (Plaintiff entitled to foreclose property and made prima facie showing of entitlement to summary judgment) (citing Citidress II v. 207 Second Avenue Realty Corp., 21 A.D.3d 774, 776-777, 802 N.Y.S.2d 393, 395 (1st Dept. 2005)).

Plaintiff fails to identify a single fact to substantiate her conclusory allegations and in fact, her admissions, the documentary proof and corroborating evidence demonstrate conclusively that the allegations against Countrywide are devoid of any merit.

Plaintiff's failure to substantiate her assertions with evidentiary facts are fatal to her application for declaratory relief. See, County of Tioga v. Solid Waste Industries, Inc., 178 A.D.2d 873, 874, 577 N.Y.S.2d 922, 924 (3d Dept. 1991) (court noted that proof of unconscionability typically requires "some showing of 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party'") (citations omitted). Plaintiff abjectly fails to identify a single provision of the Mortgage Loans which can be oppressive or unconscionable to entitle her to void the Mortgage Notes and vacate the Mortgages.

A mortgage loan will not be voided, absent allegations that the lender made a misstatement of material fact about specific loan terms, upon which the borrower relied to her detriment, otherwise the borrower will be bound by the terms of the mortgage loan. See, e.g., Barclays Bank of New York v. Sokol, 128 A.D.2d 492, 512 N.Y.S.2d 419 (2d Dept. 1987); Gateway State Bank v. Shangri-La Private Club for Women, Inc., 113 A.D.2d 791, 493 N.Y.S.2d 226 (2d Dept. 1985). Here, not only has plaintiff failed to allege any claims of fraud or material misrepresentation by Countrywide, which acted in conformity with the terms of the Loan Documents and applicable law. Plaintiff has admittedly applied for and obtained the Mortgage Loans that she bargained for, and admittedly authorized payment of the Loan Proceeds directly to Dawson to invest on her behalf. In simple terms, the injury suffered by plaintiff resulted from her own misguided investment strategy and the misconduct of her trusted investment advisor, nothing else.

Based on the foregoing, plaintiff's fifth claim seeking declaratory relief should be dismissed as a matter of law.

## POINT VII

### IN THE ALTERNATIVE, COUNRTYWIDE'S CROSS-CLAIMS AGAINST DAWSON, BMG AND KAPLAN SHOULD BE GRANTED

1. **Countrywide's Cross-Claim Against Kaplan**

By its answer to the Amended Complaint, Countrywide asserted cross-claims against co-defendants Dawson, BMG, and Kaplan on the theories of indemnification and contribution.

The cross-claims against Kaplan are based on legal malpractice and breach of contract, as Kaplan is alleged by plaintiff to have engaged in forgery by having "recreated" the Grant Street Check Disbursement Record. (Amended Complaint ¶ 70; Kaplan Tr., p. 117, lines 16 through 25).

Kaplan executed written agreements with Countrywide for both the Fulton Street and Grant Street Mortgages entitled "Closing Instructions," and in so doing, Kaplan agreed to be bound by their terms and conditions. (See Hyman Affidavit ¶¶ 7-8, Exhibits C and D). Specifically, ¶ C.3 of each of the Closing Instructions state,

> **C.   FRAUD PREVENTION.**   Lender is committed to taking the strongest action, including criminal referrals, for settlement agents and attorneys who, by their acts, create an increased risk of loss to Lender and a bad reputation for the mortgage lending industry. [...] If any one or more of the following circumstances exist during any stage of this transaction, **Settlement Agent must immediately contact**

**Lender and postpone Closing or Disbursement of the Loan until Settlement Agent receives written permission to proceed from Lender's Chief Credit Officer**.

C.3 **Fraud, Misrepresentation, Falsehoods.**   Settlement Agent has knowledge or a belief that:

a.  a fraud or scheme related to the transaction has been or may be committed,

b.  any party to the transaction, including but not limited to Borrower, Seller, Real Estate Broker, Builder, Mortgage Broker, Title Insurer, Appraiser or Settlement Agent has made a material misstatement or committed a falsehood.

c.  a loan document or invoice has been tampered with, falsely generated, bears any incorrect or falsified data, bears different names or addresses for the same party, or bears a fictitious name,

As a result of Kaplan's alleged "recreation" of a Disbursement Report for the Grant Street proceeds, Countrywide faces claims challenging the enforceability of the Mortgage Loans and the possibility, should plaintiff prevail on any of her claims against Countrywide, of having the Fulton Street Mortgage and/or the Grant Street Mortgage rescinded and/or the respective Notes voided.

Based on the foregoing, in the event that plaintiff should recover damages against Countrywide by reason of Kaplan's misconduct in falsifying the signature on the Grant Street Check Disbursement Record, Kaplan should be adjudged liable to Countrywide in like amount awarded to plaintiff, together with interest and costs of this action.

However, while Kaplan's conduct may have been irregular and ill-advised, the documentary proof and plaintiff's own admissions reveal that plaintiff clearly

authorized the proceeds of the Grant Street Loan to be paid to the order of BMG to invest on plaintiff's behalf and therefore could not have been damaged by Kaplan's alleged "recreation" of plaintiff's signature as an effort to replace a "lost document in her file." (Kaplan Tr. Pgs. 115-117).[6]  (See Exhibit 6; Amended Complaint ¶ 35).  Accordingly, should this Court find that plaintiff fails to state a claim against Countrywide for damages, then Countrywide's cross-claims would be moot.

However, despite the documentary proof and plaintiff's admissions, should this Court find that Kaplan's actions in regard to their "recreation" of plaintiff's signature on the copy of the Grant Street Payment Authorization establishes the basis of a claim against Countrywide, then Kaplan breached the terms of the Closing Instructions and/or engaged in legal malpractice in her representation of Countrywide at the Loan Closings.

Accordingly, in the unlikely event that plaintiff should recover damages against Countrywide by reason of Kaplan's misconduct in forging the signature on the Grant Street Check Disbursement Record, Dawson, BMG and Kaplan should be adjudged liable to Countrywide in like amount awarded to plaintiff, together with interest and costs of this action.

**2.    Countrywide's Cross-Claim Against Dawson and BMG Should Be Granted**

In or about December 2007, Dawson was convicted in the Nassau County Criminal Court of, inter alia, multiple counts of grand larceny resulting from the fraudulent

---

[6]   It is also revealing that although the Amended Complaint refers to a handwriting analysis, no such report was ever revealed in discovery.

Ponzi scheme he perpetrated on many borrowers, including plaintiff, and his conversion of their monies which they, like plaintiff, entrusted to him for investment. (See Exhibit 7). The doctrine of collateral estoppel permits Dawson's criminal conviction to conclusively determine his liability in this civil action. In re Nassau Ins. Co., 161 A.d.2d 146, 554 N.Y.S.2d 551 (1st Dept. 1990). Moreover, Dawson and BMG have defaulted in answering Countrywide's cross-claim.

Therefore, in the event that plaintiff should recover damages against Countrywide, Countrywide is entitled to contribution and indemnification against Peter Dawson and BMG Advisory Services, Ltd. for all or part of any judgment that plaintiff may recover against Countrywide.

## CONCLUSION

Based on the foregoing, defendant Countrywide respectfully requests that the Court grant it summary judgment against plaintiff, dismissing the Amended Complaint, or in the alternative, for summary judgment on its cross-claims against co-defendants Peter Dawson, BMG Advisory Services, Ltd., Victoria S. Kaplan, P.C. and Victoria S. Kaplan.

Dated:   New York, New York
          February 22, 2010

ZEICHNER ELLMAN & KRAUSE LLP

By: _____
     Steve S. Rand
     Anna S. Park
     Attorneys for Defendant
       Countrywide Home Loans, Inc.
     575 Lexington Avenue
     New York, New York 10022
     (212) 223-0400