UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————

№ 07-CV-1268 (JFB) (WDW)

———————

MARIA MAURO,

Plaintiff,

VERSUS

COUNTRYWIDE HOME LOANS, INC., MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., PETER J. DAWSON, BMG ADVISORY SERVICES, LTD.,
VICTORIA S. KAPLAN, AND VICTORIA S. KAPLAN, P.C.,

Defendants.

———————

**MEMORANDUM AND ORDER**
July 22, 2010

———————

JOSEPH F. BIANCO, District Judge:

Plaintiff Maria Mauro (hereinafter "plaintiff" or "Mauro") brings this action against defendants Countrywide Home Loans, Inc. (hereinafter "Countrywide"), Mortgage Electronic Registration Systems, Inc. (hereinafter "MERS"), Peter J. Dawson (hereinafter "Dawson"), BMG Advisory Services, Ltd. (hereinafter "BMG"), and Victoria S. Kaplan and Victoria S. Kaplan, P.C. (hereinafter the "Kaplan defendants"). Plaintiff asserts a federal claim under the Truth in Lending Act ("TILA"), as well as several state law claims, in connection with two mortgage loans obtained by plaintiff, the proceeds of which were allegedly misappropriated by defendant Dawson.

Before the Court are motions for summary judgment filed by Countrywide and the Kaplan defendants (hereinafter the "moving defendants"), requesting summary judgment on all of plaintiff's claims. In the alternative, Countrywide moves for summary judgment on its cross-claims against Dawson, BMG, and the Kaplan defendants. The Kaplan defendants likewise move for summary judgment on Countrywide's cross-claims. For the reasons set forth below, the Court grants the moving defendants' motions for summary judgment on plaintiff's Truth in Lending Act claim, plaintiff's only federal claim in this action. Specifically, based upon the uncontroverted facts in the record — namely, that (1) plaintiff intended to give the loan proceeds directly to Dawson so that Dawson

could invest the money for her and (2) plaintiff secured the loans with investment rental properties — and the fact that plaintiff points to no evidence showing any personal purpose for the loans, the Court concludes that the loans were obtained for business purposes and, therefore, TILA is inapplicable in this case. Additionally, the Court concludes that TILA is inapplicable to plaintiff's claim against the Kaplan defendants because plaintiff points to no evidence that the Kaplan defendants, as attorneys for Countrywide, regularly extend credit within the meaning of the statute. The Court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims. All cross-claims by Countrywide and the Kaplan defendants are dismissed as moot.

## I. BACKGROUND

### A. Factual Background

The Court has taken the facts described below from the parties' depositions, affidavits, and exhibits, and from defendants' Rule 56.1 statements of facts.[1] Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of N.Y.*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).

Plaintiff Maria Mauro has resided at 20 Elm Street in Westbury, New York since 1973. (Mauro Dep. at 11-12.) In addition to her residence at 20 Elm Street, Mauro owns other property in Westbury at 168 Grand Street and 213 Fulton Street. (Mauro Dep. at 12.) Mauro collects rent on those two properties and considers them to be "investment properties." (Mauro Dep. at 13.)

Plaintiff alleges that defendant Peter Dawson was, at all times relevant to this action, a licensed investment advisor who, through his company, BMG Advisory Services, provided financial and investment advice. (Am. Compl. ¶¶ 9-10, 14.)[2] Mauro

---

[1] The Court notes that plaintiff failed to file and serve a response to defendants' Local Rule 56.1 Statements of Facts, in violation of Local Civil Rule 56.1. Generally, a "plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d 134, 139 (S.D.N.Y. 2003)). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Gilani v. GNOC Corp.*, No. 04 Civ. 2935(ILG),

2006 U.S. Dist. LEXIS 23397, at *4-5 (E.D.N.Y. Apr. 26, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Here, although plaintiff did not submit a Rule 56.1 statement, plaintiff did provide some outline of her factual position in her opposition papers with some citation to the factual record. Thus, both the Court and defendants are able to discern the factual evidence upon which plaintiff attempts to rely to create material issues of disputed fact to overcome summary judgment. Accordingly, in the exercise of its broad discretion, the Court will overlook this defect and will deem admitted only those facts in defendants' 56.1 statements that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Jessamy*, 292 F. Supp. 2d at 504.

[2] Because plaintiff did not a Rule 56.1 statement, the Court cites to the amended complaint for background information that is undisputed on the

began using Dawson's services in about 2000. (Countrywide 56.1 ¶ 2.) Mauro knew Dawson through her husband, who died in 2002. (Mauro Dep. at 19-20.) Dawson gave plaintiff investment advice over the years. (Countrywide 56.1 ¶ 2.)

In 2006, Dawson suggested that plaintiff obtain a mortgage on the Fulton Street and Grant Street properties. According to the amended complaint, Dawson advised plaintiff that her ownership of investment properties that were not encumbered by mortgages could "raise tax related issues" with the federal and state governments. (Am. Compl. ¶ 15.) Plaintiff further alleges that Dawson said he would "put the mortgage proceeds into investments that would generate sufficient returns to service the mortgages and provide income to her." (Am. Compl. ¶ 16.) Plaintiff accepted Dawson's recommendation and, with Dawson's assistance, applied for loans on the Fulton Street and Grant Street properties. (Am. Compl. ¶ 17.) Plaintiff also consulted with her children. (Kaplan Defs.' 56.1 ¶ 23.)

Countrywide retained the services of Victoria S. Kaplan, P.C. to represent it as its attorney during the closing. (Countrywide 56.1 ¶ 8.) Kaplan executed written agreements with Countrywide regarding the conditions to be followed in connection with the closing. (Countrywide 56.1 ¶ 9.)

Countrywide subsequently approved plaintiff's applications for a $340,000 loan on the Fulton Street property and a $175,000 loan on the Grant Street property. (Am. Compl. ¶ 18; Kaplan Aff. ¶ 2.) The closing on the mortgages took place on May 30, 2006 at Dawson's office with Dawson present.

instant motion.

(Kaplan Defs.' 56.1 ¶ 22.) Plaintiff believed that Dawson was an attorney and was acting as her attorney at the closing. (Countrywide 56.1 ¶ 11.) Plaintiff's two children and another individual she knew assisted plaintiff at the closing. (Kaplan Defs.' 56.1 ¶ 25.) The Kaplan defendants were present at the closing representing Countrywide. (*See* Kaplan Aff. ¶ 3.)

At the closing, plaintiff signed a number of documents related to both properties. These included (1) a mortgage for each property; (2) a note for each property; and (3) a HUD-1 settlement statement and Truth in Lending Disclosure Statement for each property. (Countrywide 56.1 ¶¶ 12-13.) Plaintiff also signed documents authorizing the disbursement of the loan proceeds from the mortgages on the Grant Street and Fulton Street properties to BMG, Dawson's business. (Countrywide 56.1 ¶¶ 16-17.)

Defendants assert that plaintiff gave the relevant loan disclosure documents to Dawson, who promised to provide her with copies in two to three days. (Countrywide 56.1 ¶ 18; Kaplan Defs.' 56.1 ¶ 33.) Plaintiff states that she did not receive any checks or documents at the closing, nor did she receive anything from "the bank" after the closing.[3] (Mauro Decl. ¶¶ 13, 15.)

---

[3] The amended complaint also alleges that the Kaplan defendants forged plaintiff's signature on a document. (Am. Compl. ¶¶ 33-36.) Victoria Kaplan testified that she recreated, for her own personal file, a copy of a disbursement record for the Grant Street property that had been lost. (Kaplan Dep. at 115-17.) The Court need not address this factual issue because, as discussed *infra*, TILA is inapplicable to the transactions at issue as a matter of law, and, therefore, plaintiff has no federal claims in this action.

3

After the closing, plaintiff did not make any mortgage payments because Dawson "was supposed to take care of them." (Kaplan Defs.' 56.1 ¶ 36.) Dawson apparently made the mortgage payments on behalf of plaintiff for several months. (Countrywide 56.1 ¶ 20.) Plaintiff also received statements of account from Dawson indicating that the loan proceeds were deposited into a trust account in the name of BMG for plaintiff's benefit. (Countrywide 56.1 ¶ 21.) Several months after the closing, a Countrywide representative called plaintiff and asked about her mortgage payments. At this point, plaintiff attempted to obtain copies of the loan documents from Dawson and inquired about the status of the loan proceeds. (Countrywide 56.1 ¶ 22; Kaplan Defs.' 56.1 ¶¶ 34-35.)

In or about November 2006, the Nassau County police raided BMG's offices and arrested Dawson. (Countrywide 56.1 ¶ 23.) Thereafter, Mauro filed a complaint with the Nassau County Police and Nassau County District Attorney's office regarding Dawson's conduct in connection with her Countrywide loans. (Countrywide 56.1 ¶¶ 24-25.) Mauro told investigators that Dawson had advised her to: take the loans; authorize payment to BMG; and allow Dawson to manage and invest the proceeds and make Mauro's mortgage payments. (Countrywide 56.1 ¶ 25-26.) Dawson has since been charged with and convicted of, *inter alia*, multiple counts of grand larceny. (Countrywide 56.1 ¶ 27.) Mauro has been in payment default on the Grant Street and Fulton Street mortgages since February 1, 2007, although Countrywide has not commenced foreclosure proceedings. (Countrywide 56.1 ¶ 28.)

B. Procedural History

Plaintiff commenced this action on February 8, 2007 by filing a complaint in New York State Supreme Court, Nassau County. The initial complaint named Countrywide, MERS, Peter Dawson, and BMG as defendants. Countrywide and MERS subsequently removed the case to this Court. By stipulation dated May 7, 2007, defendant MERS was dismissed from this action. On May 25, 2007, defendant Dawson requested that the Court stay the proceedings in this action pending resolution of criminal proceedings against him. By Memorandum and Order dated August 27, 2007, the Court granted Dawson's request. By Order dated December 14, 2007, the Court lifted the stay and directed the parties to proceed with discovery.

On May 6, 2008, plaintiff filed a motion on consent to add additional parties, specifically, the Kaplan defendants. The Court granted plaintiff's motion on May 28, 2008. On June 19, 2008, plaintiff filed an amended complaint naming Countrywide, BMG, Dawson, Victoria S. Kaplan, and Victoria S. Kaplan, P.C. as defendants.[4] The amended complaint asserts claims for: (1) a declaratory judgment that defendants (except BMG) have failed to comply with the Truth in Lending Act and Real Estate Settlement

---

[4] Although the amended complaint also names MERS as a defendant, MERS is not a party to this action given the above-referenced May 7, 2007 stipulation and the fact that plaintiff's May 6, 2008 consent motion to name additional parties referred only to the Kaplan defendants. In any event, for the reasons discussed *infra*, the Court concludes that any federal TILA claim against MERS fails as a matter of law, and the Court declines to exercise supplemental jurisdiction over any state law claims in this action.

Procedures Act (RESPA);[5] (2) breach of fiduciary duty, apparently against all defendants;[6] (3) breach of contract against Countrywide and MERS; (4 and 5) declaratory and injunctive relief related to the mortgages and notes on the Grant and Fulton Street properties; (6) breach of contract against Dawson and BMG; (7) misappropriation and conversion against Dawson, BMG, and the Kaplan defendants; (8) fraud and misrepresentation against Dawson, BMG, and the Kaplan defendants; (9) breach of fiduciary duty against Dawson and BMG; and (10) a demand for an accounting by Dawson and BMG.

On July 7, 2008, Countrywide answered the amended complaint and asserted cross-claims for, *inter alia*, contribution and indemnification against Dawson, BMG, and the Kaplan defendants. The Kaplan defendants answered on September 5, 2008, asserting cross-claims against the other defendants. Countrywide answered the Kaplan defendants' cross-claim on September 29, 2008. Although Dawson has appeared in this action, he has not filed an answer. Defendant BMG has not answered or otherwise appeared.[7]

On February 22, 2010, Countrywide filed a motion for summary judgment with respect to all of plaintiff's claims or, in the alternative, against defendants Dawson, BMG, and the Kaplan defendants on Countrywide's cross-claims. The Kaplan defendants filed their own motion for summary judgment on the same day, seeking summary judgment on all of plaintiff's claims and on Countrywide's cross-claims. Countrywide filed its partial opposition to the Kaplan defendants' motion on April 5, 2010. Plaintiff filed its opposition to the moving defendants' motions on April 5, 2010. The moving defendants filed reply briefs in support of their motions on April 21, 2010. Oral argument was held on July 19, 2010. This matter is fully submitted.

II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005).

---

[5] Although the amended complaint refers to RESPA, plaintiff's counsel confirmed at oral argument that plaintiff does not assert a separate RESPA claim in this action, but rather only references RESPA as background to the TILA claim. In any event, loans obtained for business purposes are also exempt from the coverage of RESPA. *See* 12 U.S.C. 2606(a)(1); *LaPorte v. Countrywide Home Loans, Inc.*, No. 08-cv-408, 2009 WL 2905934, at *1 (E.D. Tenn. Sept. 3, 2009). Therefore, the Court's TILA analysis would also apply to any RESPA claims in this case.

[6] Although the heading for this claim in the amended complaint refers only to Countrywide and MERS, the allegations themselves indicate that plaintiff asserts a breach of fiduciary duty claim against all defendants.

[7] A review of the docket sheet in this action does not indicate that defendants Dawson and BMG were served with the amended complaint.

5

The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

III. DISCUSSION

A. Plaintiff's TILA Claim

Plaintiff's only federal claim in this action arises under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq*. Specifically, plaintiff alleges that defendants failed to provide her with various required disclosures in connection with the mortgages on the Fulton Street and Grant Street properties. The moving defendants argue, *inter alia*, that TILA does not apply to them in this case. Specifically, Countrywide argues that plaintiff obtained the loans in question for a business purpose, making the transactions exempt from TILA's coverage. The Kaplan defendants argue that, as attorneys for Countrywide, they are not "creditors" within the meaning of TILA and, therefore, cannot be liable.

As a threshold matter, plaintiff does not respond in her papers to the argument that TILA does not apply in this case because plaintiff obtained the loans for business purposes. Because, as discussed below, this argument is potentially dispositive of plaintiff's TILA claim, and because plaintiff does not respond to the argument, plaintiff's TILA claim is deemed to be abandoned and/or withdrawn, and summary judgment could be granted on that basis alone. *See Bellegar de Dussuau v. Blockbuster, Inc.*, No. 03 Civ. 6614 (WHP), 2006 WL 465374, at *7 (S.D.N.Y. Feb. 28, 2006) (finding claim abandoned by virtue of plaintiff's failure to address it in opposition to defendant's summary judgment motion on the claim (citing *Douglas v. Victor Capital Grp.*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998))); *see also*

*DeVito v. Barrant*, No. 03-CV-1927 (DLI) (RLM), 2005 WL 2033722, at *10 (E.D.N.Y. Aug. 23, 2005) (same); *Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); *Arias v. NASDAQ/AMEX Mkt. Group*, No. 00 Civ. 9827 (MBM), 2003 WL 354978, at *13 (S.D.N.Y. Feb. 18, 2003) (dismissing claims as "abandoned" where plaintiff's summary judgment opposition "neither refute[d] nor even mention[ed]" defendant's argument for summary judgment on two of his claims); *see also* Local Civ. Rule 7.1 ("[A]ll oppositions thereto shall be supported by a memorandum of law, setting forth the points and authorities relied upon . . . in opposition to the motion . . . . Willful failure to comply with this rule may be deemed sufficient cause for the . . . granting of a motion by default.").

Nevertheless, in an abundance of caution, the Court has considered the substance of defendants' arguments. For the reasons set forth below, the Court concludes that TILA is inapplicable in this case given the uncontroverted facts and, accordingly, grants defendants' motions for summary judgment on plaintiff's TILA claim.

1. TILA Framework

"[TILA] was enacted to assure meaningful disclosure of credit terms, avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." *See McAnaney v. Astoria Fin. Corp.*, 357 F. Supp. 2d 578, 583 (E.D.N.Y. 2005) (citing, *inter alia*, 15 U.S.C. §§ 1601-65(b) (2004) and *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559 (1980)). "Failure to make a required disclosure and satisfy the Act may subject a lender to statutory and actual damages that are traceable to the lender's failure." *Id.* When it enacted TILA, "Congress delegated authority to the Federal Reserve Board of Governors to promulgate implementing regulations and interpretations known as Regulation Z." *Id.* (citing 15 U.S.C. § 1604(a)). "These regulations, which are located at 12 C.F.R. Part 226 may be relied upon by creditors for protection from any civil or criminal liability." *Id.* (citing *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232 (2004)).

2. Analysis

a. Purpose of Loan

TILA applies only to consumer credit transactions and, therefore, does not apply to credit extended for "business, commercial, or agricultural purposes." 15 U.S.C. § 1603(1); *see also* Regulation Z, 12 C.F.R. § 226.3(a)(1) (stating that Regulation Z does not apply to "[a]n extension of credit primarily for a business, commercial or agricultural purpose"). The Second Circuit has not articulated a standard for determining whether a loan is obtained for personal or business purposes under TILA. Most other courts that have addressed the issue have held that a court must look at the entire transaction and surrounding circumstances to determine a borrower's primary motive. For instance, in the Ninth Circuit:

> "Whether an investment loan is for a personal or a business purpose requires a case by case analysis." *Thorns v. Sundance Properties*, 726 F.2d 1417, 1419 (9th Cir. 1984). This analysis requires an examination of:
>
> (1) The relationship of the borrower's

7

primary occupation to the acquisition. The more closely related, the more likely it is to be business purpose.

(2) The degree to which the borrower will personally manage the acquisition. The more personal involvement there is, the more likely it is to be business purpose.

(3) The ratio of income from the acquisition to the total income of the borrower. The higher the ratio, the more likely it is to be business purpose.

(4) The size of the transaction. The larger the transaction, the more likely it is to be business purpose.

(5) The borrower's statement of purpose for the loan.

*Daniels v. SCME Mortg. Bankers, Inc.*, 680 F. Supp. 2d 1126, 1129 (N.D. Cal. 2010) (citing *Thorns*, 726 F.2d at 1419). Other courts have taken a similar approach. *See, e.g.*, *Hinchliffe v. Option One Mortg. Corp.*, Civ. No. 08-2094, 2009 WL 1708007, at *3 (E.D. Pa. June 16, 2009) ("In order to determine whether the loan was primarily personal or commercial in nature, we must look at the entire transaction and determine the borrower's primary motive for seeking the loan." (citation omitted)); *Shames-Yeakel v. Citizens Fin. Bank*, 677 F. Supp. 2d 994, 1002 (N.D.N.Y. 2009) ("In determining whether a particular transaction had a primarily consumer or business nature within the meaning of the TILA, courts look to the entire surrounding factual circumstances." (quotation omitted)); *Macheda v. Household Fin. Realty Corp. of N.Y.*, No. 04-CV-0325 (GTS/GJD), 2009 WL 113474, at *5 (N.D.N.Y. Jan. 15, 2009) (collecting cases).

As a general matter, the burden is on plaintiff to show that the loan in question was obtained for personal, as opposed to business, purposes. *See, e.g.*, *Hinchliffe*, 2009 WL 1708007, at *3 ("[Plaintiff] has the burden of evidencing his intent and showing that the loan was entered into primarily for personal purposes, as opposed to financing his businesses." (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 751 (3d Cir. 1974))) (granting summary judgment for defendant creditor); *see also, e.g.*, *Macheda*, 2009 WL 113474, at *5 ("When there is a dispute between parties as to the type of transaction, '[t]he plaintiff has the burden of showing that the disputed transaction was a consumer credit transaction, not a business transaction.'" (quoting *Searles v. Clarion Mortg. Co.*, 87-CV-3495, 1987 WL 61932, at *3 (E.D. Pa. Dec. 7, 1987))).

In the instant case, there is no dispute that plaintiff obtained the Fulton Street and Grant Street mortgage loans for investment purposes. Plaintiff alleges in the amended complaint that the proceeds of the loan were to be used to pay off the mortgages on the rental properties and for investment. (Am. Compl. ¶¶ 15-17.) Plaintiff repeatedly testified in her deposition that the loans were obtained for investment purposes. (*See, e.g.*, Mauro Dep. at 39, 42-43, 47-49.) For instance, plaintiff testified:

Q. [D]id you talk to Peter Dawson about the Countrywide loans?

A. He kept saying he wanted to invest our money.

Q. And was it your understanding that he was investing the money?

8

A. That's what we thought.

Q. And did you have an idea precisely what type of investment he had selected to place the money?

A. He was saying he would double our money, but I don't know what he was doing with it.

Q. And was that proposal something that was appealing to you?

A. Well, if he could earn that money for us, of course, but I didn't think he would go under.

(Mauro Dep. at 79-80; *see also* Mauro Dep. at 49 ("Q. Did Dawson tell you that he would invest your money in a hedge fund that would earn a higher rate of interest? A. Yes, that's why we trusted him, yes.").) It is also undisputed that plaintiff did not reside in either of the mortgaged properties, which plaintiff rented out for investment purposes. (*See* Mauro Dep. at 12-13; Countrywide Exs. E, F.)

As a general matter, when a party obtains a loan in order to make a profit, that loan is not considered a "personal" loan under TILA. *See, e.g.*, *In re Booth*, 858 F.2d 1051, 1054-55 (5th Cir. 1988) ("Cases decided under the Truth in Lending Act indicate that when the credit transaction involves a profit motive, it is outside the definition of consumer credit." (collecting cases)). In particular, it is well settled that a loan obtained in order to invest in non-owner occupied rental properties is a loan for business purposes. *See* Official Staff Commentary, Board of Governors of the Federal Reserve System, Section 226.3, Commentary 3(a)(3), 46 Fed. Reg. 50288, 50297 (Oct. 9, 1981) ("Credit extended to acquire, improve, or maintain rental property (regardless of the number of housing units) that is not owner-occupied is deemed to be for business purposes."); *see, e.g.*, *Corcoran v. Saxon Mortg. Servs., Inc.*, Civ. No. 09-11468-NMG, 2010 WL 2106179, at *3 (D. Mass. May 24, 2010) (holding TILA inapplicable where "[a]t the time the plaintiff obtained the loan, he represented to the lender that it would be used to purchase an 'investment property' and that he did not intend to occupy the premises personally"); *Lind v. New Hope Prop., LLC*, Civil No. 09-3757 (JBS/KMW), 2010 WL 1493003, at *5 (D.N.J. Apr. 13, 2010) ("[C]ourts have consistently held that loans obtained to purchase non-owner occupied rental property are for a 'business purpose' and are not covered by TILA." (collecting cases)); *Daniels*, 680 F. Supp. 2d at 1131 (granting motion to dismiss TILA claim, reasoning that "[b]ecause the property at issue was clearly not owner occupied, Plaintiff's loan was not for a personal purpose under TILA"); *Goff v. Utah Funding Commercial, Inc.*, No. 2:09-CV-00680, 2009 WL 4665800, at *3 (D. Utah Dec. 2, 2009) (granting summary judgment on TILA claim where loans were secured by a rental property that plaintiff owned for commercial purposes and the loans were obtained to further plaintiff's investment in that property); *In re Macklin*, Nos. 05-12750-BGC-13, 08-00013-BGC-13, 2009 WL 3080461, at *6 (Bankr. N.D. Ala. Sept. 23, 2009) ("[T]he debtor purchased [the properties at issue] for business purposes, did not intend to occupy either of them, and has in fact not occupied them. Consequently, the defendant was not required to make the disclosures described in [15 U.S.C. § 1638] to the debtor in connection with either of the loans."); *LaPorte v. Countrywide Home Loans, Inc.*, No. 3:08-cv-408, 2009 WL 2905934, at *2 (E.D. Tenn. Sept. 3, 2009) ("Similarly, the court

finds that plaintiff in the instant action obtained the property for commercial rental purposes; RESPA and TILA therefore do not apply to the mortgage."). Therefore, to the extent plaintiff obtained the loans in order to further her investment in the rental properties, the loan was clearly a "business" loan as a matter of law and, therefore, exempt from the coverage of TILA.[8]

To the extent plaintiff argues that the loans were obtained in order to invest for some unspecified personal purpose, plaintiff has failed to meet her burden in opposing the instant motion for summary judgment. At oral argument, plaintiff's counsel pointed to no evidence of a personal purpose for the loans and acknowledged that the loans were specifically designed for plaintiff to give the loan proceeds directly to Dawson for investment purposes.[9] Thus, plaintiff has failed to meet her burden of producing any evidence that would create a genuine issue of disputed fact as to the purpose of the loan. In the absence of any evidence whatsoever that plaintiff's loans were obtained for personal purposes, defendants are entitled to summary judgment. *See, e.g.*, *Daniels*, 680 F. Supp. 2d at 1129 ("Plaintiff does not allege any facts relevant to the five-factor inquiry required under *Thorns v. Sundance Properties*, 726 F.2d at 419. This failure to allege any facts precludes plaintiff from availing himself of the protections contained in TILA and RESPA." (granting motion to dismiss)); *Goff*, 2009 WL 4665800, at *3 ("Looking at the underlying credit transaction as a whole, the court finds that the loan transaction was undertaken for commercial purposes. First, . . . both loans were secured by a rental property that [plaintiff] owned for commercial purposes. Additionally, the proceeds from the loans were used to pay off obligations related to the rental property. Finally, [defendant] provided a copy of an Affidavit of Commercial Purpose, signed by [plaintiff], stating that the loan would be used for a business or commercial purpose only. [Plaintiff] was unable to provide any competent evidence that the proceeds were used for personal, family, or household purposes in order to establish an issue of fact. Therefore, the court concludes that the loan was for commercial purposes and not subject to TILA."); *Galindo v. Financo Fin., Inc.*, No. C 07-3991 (WHA), 2008 WL 4452344, at *4 (N.D. Cal. Oct. 3, 2008) ("[Plaintiff] contends that there is no way to tell whether or not the loan was made for a business or personal purpose because she has not alleged any facts one way or the other in the complaint. That much is true. Without any such allegations detailing the purposes of the loans, [plaintiff] has stated no claim. Her TILA claim is therefore dismissed."); *cf. Shames-Yeakel*, 677

---

[8] The Court recognizes that the fact that the properties securing the loans were rental properties is not dispositive on the question of plaintiff's purpose in obtaining the loan. *See, e.g.*, *Hinchliffe v. Option One Mortg. Corp.*, Civ. No. 08-2094, 2009 WL 1708007, at *4 (E.D. Pa. June 16, 2009) ("[I]n determining whether the loan qualifies for TILA [or] RESPA, . . . the focus is not on the nature of the property securing the loan, but on the use of the loan proceeds."). However, for the reasons discussed above, because the plaintiff intended to use the proceeds of the loans for investment by Dawson, the loans were obtained for business purposes as a matter of law.

[9] Plaintiff's counsel asserted at oral argument that, as alleged in the complaint (Am. Compl. ¶ 15) and alluded to in plaintiff's declaration (Mauro Decl. ¶ 8), plaintiff also obtained the loans because of tax-related issues on her rental properties. However, to the extent plaintiff obtained the loans to address tax-related issues on her investment rental properties, that would also be a business purpose as a matter of law.

10

F. Supp. 2d at 1002-03 ("Looking to the substance of the transactions on Plaintiffs' home equity line of credit, Plaintiffs have produced sufficient evidence that the account was held for 'consumer' purposes. . . . For example, their loft serves as their son's personal residence . . . .") (denying motion for summary judgment); *Macheda v. Household Fin. Realty Corp. of N.Y.*, 631 F. Supp. 2d 181, 185-87 (N.D.N.Y. 2008) (denying motion for summary judgment on TILA claim where plaintiffs alleged that the purpose of the loan was "personal"; the fact that 16.65% of plaintiffs' home was used for day care business did not establish a business purpose as a matter of law).

Accordingly, because it is uncontroverted that plaintiff obtained the Grant Street and Fulton Street mortgages in order to give the proceeds directly to Dawson for investment purposes, used non-owner occupied rental property as security for the loans, and has failed to point to any evidence indicating that the loans were obtained for a personal purpose, Countrywide's motion for summary judgment on plaintiff's TILA claim is granted.[10]

---

[10] The Court does not hold that every loan obtained for investment purposes is necessarily a business loan exempt from the coverage of TILA. *See Thorns*, 726 F.2d at 1419 ("[I]n some circumstances, a loan for the purpose of purchasing a limited partnership interest for investment may be covered by the TILA.") (reversing summary judgment where district court held that any loan obtained in order to invest was necessarily a loan for business purposes). Instead, as discussed above, the Court grants defendants' motion for summary judgment in this case because it is uncontroverted that plaintiff obtained the loans for investment purposes, used investment rental property as security for the loans, and has failed to point to any evidence to show that the loans were obtained for personal purposes.

[11] Because the Court concludes, as discussed *supra*, that the loans were obtained for investment business purposes, plaintiff's TILA claim against the Kaplan defendants must fail as well. However, as discussed *infra*, the Court concludes that plaintiff's TILA claims fail against the Kaplan defendants for the additional reason that the Kaplan defendants are not "creditors" under the statute.

b. TILA's Application to Creditors

The Kaplan defendants argue that they are entitled to summary judgment on plaintiff's TILA claims because they are not "creditors" within the meaning of the statute.[11] For the reasons set forth below, the Court agrees.

TILA's disclosure obligations apply only to "creditors," which the statute defines as

> only . . . a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, *and*
>
> (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(f) (emphasis added).

Regulation Z defines a "creditor" as: "[a] person who regularly extends consumer credit

11

that is subject to a finance charge or is payable by written agreement in more than 4 installments (not including a downpayment), and to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract." 12 C.F.R. § 226.2(a)(17)(i).

In several cases, courts have found that attorneys do not qualify as "creditors" under TILA, and this Court agrees with the analysis in these decisions.[12] *See, e.g.*, *Riethman v. Berry*, 287 F.3d 274, 279 (3d Cir. 2002) (holding that law firm was not creditor under TILA because it did not "regularly" extend credit to its clients); *Davis v. Wilmington Fin., Inc.*, Civ. No. PJM 09-1505, 2010 WL 1375363, at *4 (D. Md. Mar. 26, 2010) ("[Defendants] cannot violate TILA or HOEPA by acting as Substitute Trustees or as a law firm because they are not creditors as defined by those statutes." (citation omitted)); *Maus v. Toder*, 681 F. Supp. 2d 1007, 1018 n.2 (D. Minn. 2010) ("Other issues not raised cast doubt on the viability of a Truth in Lending Act/Regulation Z claim as well. A good argument could be made that a law firm [] is not a creditor as defined in the Truth in Lending Act and Regulation Z." (citation omitted)); *Langenfeld v. Chase Bank U.S.A., N.A.*, 537 F. Supp. 2d 1181, 1205 (N.D. Okla. 2008) (holding that law firm was not "creditor" under TILA, nor was it agent of creditor); *Smith v. Argent Mortg. Co., LLC*, 447 F. Supp. 2d 1200, 1204 (D. Colo. 2006) (holding that plaintiff had failed to sufficiently allege that law firm hired by creditor to institute foreclosure proceedings was itself a creditor).[13]

Plaintiff argues that the Kaplan defendants are creditors because they collected "finance charges" at the closing in the form of attorneys' fees.[14] Plaintiff cites no authority for the proposition that a lender's attorney becomes a creditor by collecting attorneys'

---

[12] Because of the general absence of applicable TILA case law in the Second Circuit on this issue, district courts have looked to other circuits for guidance on this issue. *See Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 529 n.17 (E.D.N.Y. 2006); *see generally Ringenback v. Crabtree Cadillac-Oldsmobile, Inc.*, 99 F. Supp. 2d 199 (D. Conn. 2000).

[13] Similarly, numerous courts have held that mortgage brokers are not creditors under TILA. *See, e.g.*, *Viernes v. Executive Mortg., Inc.*, 372 F. Supp. 2d 576, 580-82 (D. Haw. 2004) (discussing TILA's definition of "creditor" and concluding that the defendant mortgage broker was not a creditor within the meaning of TILA because broker did not regularly extend consumer credit and was not the person to whom the loan obligation is payable); *see also Robey-Harcourt v. Bencorp Fin. Co.*, 326 F.3d 1140, 1142-43 (10th Cir. 2003); *Wilson v. Homecomings Fin. Network, Inc.*, 407 F. Supp. 2d 893, 896 (N.D. Ohio 2005); *Noel v. Fleet Fin.*, 971 F. Supp. 1102, 1109 (E.D. Mich. 1997); *Sweeney v. Savings First Mortg., LLC*, 879 A.2d 1037, 1046-48 (Md. 2005) (finding that "[o]ne thing is certain, mortgage brokers are not included in the definition of 'creditor' under the TILA" and therefore holding that TILA does not preempt state laws that regulate mortgage brokers).

[14] To the extent plaintiff argues that the Kaplan defendants can be liable under TILA as Countrywide's agents, the Court rejects that argument. *See, e.g.*, *Iannuzzi v. Washington Mut. Bank*, No. 07-cv-964 (JFB)(WDW), 2008 WL 3978189, at *8 n.5 (E.D.N.Y. Aug. 21, 2008) (holding that alleged agency relationship between lender and broker did not give plaintiffs a TILA claim against broker); *see also Vallies v. Sky Bank*, 432 F.3d 493, 495 (3d Cir. 2006) ("On its face, [TILA] clearly vests the duty of disclosure on the, and only the, actual creditor and not on any third party to the credit transaction.").

fees from the lender, which passes the cost on to the borrower. The Kaplan defendants argue that, even assuming *arguendo* that they collected "finance charges" and that such charges were payable to the Kaplan defendants, plaintiff does not point to any evidence that the Kaplan defendants regularly extend credit. Instead, plaintiff asserts: "Conceivably as an experienced closer of loans, Kaplan regularly extends credit in this manner." (Pl.'s Kaplan Opp. Br. at 7-8.) At oral argument, plaintiff's counsel conceded that there was no evidence in the record that the Kaplan defendants regularly extend credit. Plaintiff's conclusory assertion in her brief is insufficient to defeat the Kaplan defendants' motion for summary judgment on this point. *See, e.g.*, *Robey-Harcourt v. BenCorp Fin. Co.*, 212 F. Supp. 2d 1332, 1334 (W.D. Okla. 2002) ("The plaintiff has failed to produce adequate evidence indicating that the defendants regularly extend consumer credit or were the 'persons' to whom the debt was to be payable. Because the plaintiff has failed to produce sufficient evidence that the defendants are creditors under TILA and Regulation Z, the court finds that the TILA claim against them fails as a matter of law."), *aff'd*, 326 F.3d 1140, 1142 (10th Cir. 2003). Because plaintiff has failed to point to any evidence that the Kaplan defendants regularly extend credit, the Kaplan defendants are entitled to summary judgment on plaintiff's TILA claim.

\*\*\*

In short, plaintiff's TILA claim fails as a matter of law because the uncontroverted evidence in the record demonstrates that the loans in question were obtained for business purposes. The Kaplan defendants are also entitled to summary judgment on plaintiff's TILA claim for the additional reason that they are not creditors within the meaning of the statute. Accordingly, the moving defendants' motions for summary judgment on plaintiff's TILA claim are granted.[15]

B. State Law Claims

Having determined that plaintiff's only federal claim in this action does not survive defendants' motions for summary judgment, the Court concludes that retaining jurisdiction over any state law claims is unwarranted. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction [] if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-cv-6497T, 2007 WL 1703914, at \*5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)).

Therefore, in the instant case, the Court, in its discretion, declines to exercise supplemental jurisdiction over plaintiff's state law claims. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants'

---

[15] Because the Court concludes, as a matter of law, that TILA does not apply in this case, the Court does not address the parties' arguments as to whether defendants did, in fact, comply with the statute's disclosure requirements.

13

federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction.") (citing 28 U.S.C. § 1367(c)(3)); *Karmel v. Claiborne, Inc.*, No. 99 Civ. 3608(WK), 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over the remaining state law claims given the absence of any federal claims that survive the motions for summary judgment and dismisses such claims without prejudice.[16]

### C. Defendants' Cross-Claims

Because defendants' motions for summary judgment are granted with respect to plaintiff's TILA claim, and because the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims, the moving defendants' cross-claims, which seek indemnification on plaintiff's claims, are dismissed as moot.[17]

### IV. CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment are granted with respect to plaintiff's federal TILA claim. The Court declines to retain jurisdiction over plaintiff's remaining state law claims and dismisses such claims without prejudice. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: July 22, 2010
Central Islip, New York

\* \* \*

Attorneys for plaintiff are Scott A. Roenberg and Kenneth A. Pagliughi, Scott A. Rosenberg, P.C., 2400 Jericho Turnpike, Suite 201, Garden City, NY 11040, and John R. Sordi, Of Counsel to Scott A. Rosenberg, P.C., 265 Post Ave., Suite 120, Westbury, NY 11590. Attorney for Countrywide is Steven S. Rand, Zeichner Ellman & Krause, 575 Lexington Ave., New York, NY 10022. Attorneys for the Kaplan defendants are Marian C. Rice, Scott E. Kossove, and Daniel M. Maunz, of L'Abbate, Balkan, Colavita &

---

[16] As plaintiff's counsel conceded at oral argument, plaintiff asserts no federal claims against defendants Dawson and BMG. Thus, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims against Dawson and BMG and, therefore, dismisses those claims without prejudice.

[17] Countrywide conceded in its papers and at oral argument that its cross-claims would be moot if the Court granted its motion for summary judgment on plaintiff's claims.

14

Contini, LLP, 1050 Franklin Ave., Garden City, NY 11530. Attorney for Peter J. Dawson is Peter J. Tomao, Law Office of Peter J. Tomao, 226 Seventh Street, Suite 302, Garden City, NY 11530.